UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
LAURIE A. DICKEY,                                    Chapter 7
              DEBTOR.                                 Case No. 13-10318-WCH

_____

**MEMORANDUM OF DECISION**

## I. INTRODUCTION

The matters before the Court are the "Amended Motion to Avoid Judicial Liens of New England Phoenix Co., Inc."  (the "Motion to Avoid NEPCO Lien") filed by Laurie A. Dickey (the "Debtor"), the "Objection of New England Phoenix Co., Inc. to Debtor's Motion to Avoid Judicial Liens of New England Phoenix Co., Inc."  (the "NEPCO Objection") filed by New England Phoenix Co., Inc. ("NEPCO"), the "Motion to Avoid Judicial Liens of Ridgewood Partners, LLC" (the "Motion to Avoid Ridgewood Lien," collectively with the Motion to Avoid NEPCO Liens, the "Lien Avoidance Motions") filed by the Debtor, and the "Objection of Ridgewood Partners, LLC, to Motion to Avoid Judicial Liens of Ridgewood Partners, LLC" (the "Ridgewood Objection") filed by Ridgewood Partners, LLC ("Ridgewood," collectively with NEPCO, the "Lienholders").  Through the Lien Avoidance Motions, the Debtor seeks to avoid judicial liens held by the Lienholders as impairing her exemption claimed pursuant to the Massachusetts Homestead Statute.[1]  The Lienholders oppose for a plethora of reasons.[2]  For the

_____

[1] Mass. Gen. Laws ch. 188, § 1 *et seq.*

[2] The Lienholders also filed objections to the Debtor's claim of homestead exemption.

1

reasons set forth below, I will sustain the objections in part and conditionally schedule the matter for an evidentiary hearing to determine the value of the property.

## II. <u>BACKGROUND</u>

The facts are not in dispute. The liens in question encumber real estate located at 110 Sea Shells Drive in Chatham, Massachusetts (the "Property") at which the Debtor resides. The Debtor individually took title to the Property by a deed recorded on March 22, 2005 in the Barnstable Land Court Registry (the "Land Court").[3] On March 22, 2005, the Debtor executed a note in favor of HSBC Mortgage Corporation (USA) ("HSBC") in the principal amount of $555,000.00 and granted a first mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee of HSBC, to secure the obligation.[4] On the same date, the Debtor granted a second mortgage directly to HSBC to secure a Home Equity Line of Credit in the principal amount $110,000.00.[5]

Between 2005 and 2006, the Debtor operated several construction businesses, including Ridgewood Custom Homes, Inc. ("RC Homes") and Blackwood Development Corporation ("Blackwood," collectively with RC Homes, the "Debtor Entities"), for which she was a principal, director, and shareholder. Ridgewood contracted the Debtor Entities to serve as general contractors on a residential construction project in Hingham, Massachusetts (the "Project"). The Debtor executed and delivered a contract and a personal guaranty that

---

[3] Exhibit 1, Docket No. 107-1 at 1-2.

[4] Exhibit 2, Docket No. 107-1 at 6-27.

[5] Exhibit 3, Docket No. 107-2 at 1-19.

guaranteed the Debtor Entities completion of the Project.[6]   Ultimately, the Debtor Entities breached the contract, giving rise to Ridgewood's claim.[7]

On August 30, 2006, the Debtor executed a Declaration of Trust (the "Declaration of Trust") of Lanac Shores Realty Trust ("the Lanac Trust") and named Ruth Goodhall ("Goodhall") as trustee.[8]  According to the terms of the Lanac Trust, the trustee's powers were expressly subject to the discretion of the trust beneficiaries.[9]  The Debtor did not file a copy of the schedule of beneficial interests, but states in her affidavit that she was the sole beneficiary of the Lanac Trust.[10]  On September 1, 2006, the Debtor recorded in the Land Court the Declaration of Trust and a quitclaim deed transferring the Property to Goodhall as trustee for consideration of $1.00.[11]

On September 13, 2006, Ridgewood filed a complaint against the Debtor, the Debtor Entities, and Goodhall in the Superior Court Department of the Trial Court for Plymouth County (the "Plymouth Superior Court").   In its complaint, Ridgewood alleged, *inter alia*, that the Property had been fraudulently conveyed by the Debtor to Goodhall.  The following day, the Plymouth Superior Court issued a writ of attachment in favor of Ridgewood, attaching "the right, title, and interest that . . . Goodhall" had in the Property in the amount of $300,000.00, which Ridgewood recorded in the Land Court (the "Ridgewood Lien") on September 14, 2006.[12]

---

[6] *See* Exhibit F, Docket No. 100 at 26-32.

[7] *Id.*

[8] Exhibit C, Docket No. 99-1 at 9-12.

[9] *Id.*

[10] Exhibit B, Docket No. 99-1 at 4-8.

[11] Exhibit C, Docket No. 99-1 at 9-12; Exhibit B, Docket No. 100 at 13-14.

[12] Exhibit E, Docket No. 99-1 at 16-18.

On September 20, 2006, Sovereign Bank filed a complaint in the Superior Court Department of the Trial Court for Suffolk County (the "Suffolk Superior Court") against the Debtor, RC Homes, and William R. Dickey, alleging a default on a commercial loan (the "Commercial Loan Action"). NEPCO subsequently bought the loan and was substituted as the plaintiff. On November 2, 2007, NEPCO filed its own fraudulent transfer action in the Suffolk Superior Court against the Debtor and Goodhall (the "Fraudulent Transfer Action"). On November 9, 2007, NEPCO obtained a writ of attachment against "the right, title, and interest that . . . Goodhall" had in the Property in the amount of $500,000.00, which it recorded in the Land Court on November 13, 2007.[13]

On August 19, 2008, the Suffolk Superior Court entered judgment against the defendants in the Commercial Loan Action.[14] Just over two months later, on October 29, 2008, the Suffolk Superior Court approved a separate agreement for judgment between NEPCO and Goodhall as trustee.[15] Pursuant to this agreement, the Suffolk Superior Court entered an execution against Goodhall as trustee in the amount of $530,531.37 on November 14, 2008. On that same date, NEPCO obtained a separate execution against the Debtor, RC Homes, and William Dickey in the amount of $536,353.18.[16] On November 25, 2008, NEPCO recorded the execution against Goodhall in the Land Court (the "NEPCO Lien").[17] It does not appear that the execution against defendants in the Commercial Loan Action was recorded.

---

[13] Exhibit C, Docket No. 100 at 15.

[14] Exhibit G, Docket No. 95 at 39.

[15] Exhibit E, Docket No. 95 at 33-34.

[16] Exhibit G, Docket No. 95 at 39.

[17] Exhibit 6, Docket No. 107-3 at 4-10.

On June 19, 2007, while the Lienholders' various state court actions were pending, National Lumber Company ("National Lumber") recovered a judgment against the Debtor in the Superior Court Department of the Trial Court for Bristol County (the "Bristol Superior Court").[18] On August 9, 2007, the Bristol Superior Court issued an execution in favor of National Lumber against Goodhall as trustee in the amount of $176,837.27.[19]  National Lumber's execution was recorded in the Land Court on September 26, 2008.[20]

On April 29, 2009, the Internal Revenue Service recorded a Notice of Federal Tax Lien against the Debtor in the amount of $27,452.60 in the Barnstable County Registry of Deeds.[21] Similarly, on July 27, 2009, the Commonwealth of Massachusetts Department of Revenue filed a Notice of Massachusetts Tax Lien against the Debtor in the amount of $2,000.00 in the Barnstable Country Registry of Deeds.[22]

On March 30, 2011, the Debtor, as the Lanac Trust's sole beneficial interest holder removed Goodhall as trustee and appointed Steven J. Cirpriano ("Cipriano") as successor trustee.[23]   On April 7, 2011, Cirpriano executed a Declaration of Homestead (the "2011 Homestead") with respect to the Property and identified the Debtor as the beneficiary of the Lanac Trust.[24]  Both the notice of Goodhall's removal and the 2011 Homestead were recorded in

---

[18] Exhibit G, Docket No. 99-1 at 22-24.

[19] *Id.*

[20] *Id.*

[21] Exhibit 9, Docket No. 107-4 at 10-11.

[22] Exhibit 10, Docket No. 107-4 at 12-13.

[23] Exhibit H, Docket No. 99-1 at 25-26.

[24] Exhibit I, Docket No. 99-1 at 27-29.

the Land Court on July 28, 2011.[25]   On September 7, 2011, Nickerson Lumber Company
("Nickerson Lumber") recorded a writ of attachment against Cipriano as trustee in the amount of
$10,000.00, attaching the "right, title and interest" that Cipriano had in the Property.[26]

By late October 2011, a jury in the Ridgewood action found, *inter alia*, that the Debtor's
conveyance of the Property to Goodhall as trustee was a fraudulent transfer following a seven
day jury trial in the Plymouth Superior Court.[27]   In its "Ruling and Order on Post-Verdict Issues"
(the "Ruling and Order"), the Plymouth Superior Court noted that it denied the Debtor's motion
for judgment notwithstanding the verdict on this issue because "the evidence supporting a
finding of fraudulent conveyance was compelling, if not overwhelming."[28]   Goodhall was
defaulted after she declined to participate beyond her initial appearance.[29]   On November 3,
2011, the Plymouth Superior Court entered a "Judgment on Jury Verdict" (the "Ridgewood
Judgment") which provides in relevant part:

It is **DECLARED**, **ORDERED** and **ADJUDGED**:

I.     It is DECLARED that the Deed conveying the property known as and
       numbered 110 Sea Shell Lane, Chatham, Barnstable County,
       Massachusetts, from Laurie Dickey to the Lanac Shores Realty Trust,
       recorded at the Barnstable Land Court Registry as Document No.
       1,043,231 with Certificate No. 181012 on September 1, 2006, is hereby
       null and void.

II.    It is further DECLARED and ORDERED that the Deed dated March 22,
       2005 recorded at the Barnstable Land Court Registry as Document No.
       996,904 with Certificated No. 176191 to Laurie Dickey is hereby revived.

---

[25] Exhibit H, Docket No. 99-1 at 25-26; Exhibit I, Docket No. 99-1 at 27-29.

[26] Exhibit 11, Docket No. 107-4 at 14-15.

[27] Exhibit F, Docket No. 100 at 26-32.

[28] *Id.* at n. 2.

[29] Exhibit F, Docket No. 100 at 26-32.

III.    It is further ORDERED that the attachment issued by the Court dated September 13, 2006, and the injunction issued on August 28, 2007 shall continue in full force and effect unless otherwise ordered by the Court. Specifically, the Court ENJOINS and PROHIBITS Laurie Dickey, as sole named beneficiary of the Lanac Shores Realty Trust and Ruth Goodhall as trustee or any other successor trustee, from taking any steps to transfer, convey, sell, mortgage, or in any way alienate the property, nor take any steps to hinder, avoid or interfere with the plaintiff's right to execute its judgment by levying on said property.

* * *

V.    That the plaintiff, **Ridgewood Partners, LLC**, recover of the defendant **Laurie Dickey**, the sum of **$398,607.00** with interest thereon from 09/13/2006 to 11/02/2011 in the sum of **$245,849.84** as provided by law, c. 93A damages in the sum of **$42,890.00**, attorney's fees in the sum of **$28,708.29** and its costs of action . . . .[30]

On February 3, 2012, the Debtor filed a petition in the Land Court seeking to have the Ridgewood Judgment enforced insofar as it declared the deed to Goodhall "null and void" and ordered the revival of the prior deed and title certificate.[31] This was done without notice to any party, including the Lienholders. On March 6, 2012, the Land Court's Chief Title Examiner directed the Debtor to provide him with copies of the title certificate corresponding to the March 22, 2005 deed to the Debtor and nine encumbrances.[32] The Debtor filed the requested documents on April 30, 2012.[33] On June 22, 2012, the Land Court entered an order granting the Debtor the requested relief, and further ordering that eight intervening encumbrances be noted on the revived certificate of title (the "Revived Certificate").[34] As part of this process, the

---

[30] Exhibit J, Docket No. 99-1 at 30-32 (bold in original).

[31] Exhibit E, Docket No. 100 at 23-25.

[32] Exhibit G, Docket No. 100 at 33.

[33] Exhibit H, Docket No. 100 at 34-40.

[34] Exhibit K, Docket No. 99-1 at 33-34.

Ridgewood Judgment was recorded in the Land Court on June 25, 2012.[35]  On the same day, the Debtor registered a Declaration of Homestead with respect to the Property (the "2012 Homestead") in the Land Court, asserting that she was the sole owner and referencing the Revived Certificate.[36]

On July 11, 2012, F.D. Sterritt Lumber Company ("Sterritt Lumber") recorded in the Land Court an execution in the amount of $20,168.11 against the Debtor's interest in the Property.[37]

On January 23, 2013, the Debtor filed a voluntary Chapter 7 petition.  On "Schedule A – Real Property" ("Schedule A"), the Debtor listed a fee simple ownership interest in the Property. The Debtor further listed the value of the Property at $980,000.00.  On "Schedule C – Property Claimed as Exempt" ("Schedule C"), the Debtor claimed an exemption in the Property in the amount of $500,000.00 pursuant to Mass. Gen. Laws ch. 188, § 1 (the "Exemption").

As of the petition date, the Property was subject to the following encumbrances:[38]

| Holder | Lien Type | Date | Amount |
|---|---|---|---|
| HSBC Mortgage Corp. | First Mortgage | 3/22/2005 | $485,413.00 |
| HSBC Mortgage Corp. | Second Mortgage | 3/22/2005 | $99,227.00 |
| Ridgewood | Attachment | 9/14/2006 | $716,053.13 |
| NEPCO | Execution | 11/13/2007 | $797,570.34 |
| National Lumber | Execution | 9/26/2008 | $350,728.87 |
| Federal Tax Lien | Tax Lien | 4/29/2009 | $15,208.84 |
| MA State Tax Lien | Tax Lien | 7/27/2009 | $2,000.00 |
| Nickerson Lumber | Execution | 9/7/2011 | $10,000.00 |
| Sterritt Lumber | Execution | 7/11/2012 | $18,224.21 |
|  |  | **Total:** | **$2,494,427.39** |

---

[35] Exhibit J, Docket No. 99-1 at 30-32.

[36] Exhibit 5, Docket No. 107-3 at 1-3.

[37] Exhibit 12, Docket No. 107-4 at 16-18.

[38] *See* Motion to Avoid NEPCO Lien, Docket No. 107 at 2-6.

The values reflected in the table above are those used by the Debtor in the Lien Avoidance Motions and, with one exception, are consistent with the proofs of claim filed in this case.[39] Contrary to the Debtor's listing, however, Ridgewood filed a proof of claim dividing its claim into a secured claim of $300,000.00 and an unsecured claim of $416,053.13.[40]

On April 25, 2013, NEPCO filed the "Objection of New England Phoenix Co., Inc. to Debtor's Claim of Homestead Exemption" (the "NEPCO Homestead Objection"), asserting, *inter alia*, that the NEPCO Lien is excepted from the Exemption pursuant to Mass. Gen. Laws ch. 188, § 3(b)(6) as being based on fraud and that the Exemption must be otherwise limited to $155,675 pursuant to 11 U.S.C. § 522(p)(1).  Four days later, on April 29, 2013, Ridgewood filed the "Objection of Ridgewood Partners, LLC to Debtor's Claim of Homestead Exemption" (the "Ridgewood Homestead Objection"), echoing NEPCO's arguments and further arguing that the 2012 Homestead was registered in violation of the Plymouth Superior Court's injunction provided in the Ridgewood Judgment.  On June 14, 2013, the Debtor filed responses to both the NEPCO Homestead Objection and the Ridgewood Homestead Objection, contending that the effect of the Ridgewood Judgment is to establish that she has held title to the Property since 2005 without interruption.  After a hearing on June 21, 2013, I continued generally both the NEPCO Homestead Objection and the Ridgewood Homestead Objection in favor of addressing these issues in the context of lien avoidance under 11 U.S.C. § 522(f).

---

[39] The Debtor overstated the Ridgewood claim by $2.00 in her motions, which I have corrected in the above table.

[40] *See* Claim No. 10-1.

On February 7, 2014, the Debtor filed her original motion to avoid the NEPCO Lien.[41]

NEPCO filed the NEPCO Objection on February 24, 2014, repeating the arguments made in the

NEPCO Homestead Objection.   On February 26, 2014, the Debtor filed an opposition to the

defenses raised in the NEPCO Objection.   On February 28, 2014, I heard the original motion to

avoid the NEPCO Lien and, at the conclusion of oral arguments, continued the matter to April

11, 2014 and ordered the parties to file additional briefs.   They each did so on April 4, 2014.

Although the Debtor had not yet sought to avoid the Ridgewood Lien, Ridgewood filed a limited

response to the Motion to Avoid NEPCO Lien on April 4, 2014, reiterating its objection to the

Exemption in order to preserve its rights.   On April 7, 2014, the Debtor filed the Motion to

Avoid NEPCO Lien along with an amended brief in support and a response to Ridgewood's

limited response.   I heard the matter on April 11, 2014, and took the Motion to Avoid NEPCO

Lien under advisement.

Just prior to the hearing on the Motion to Avoid NEPCO Lien, the Debtor filed the

Motion to Avoid Ridgewood Lien on April 8, 2014.   Ridgewood filed the Ridgewood Objection

on May 2, 2014.   On June 3, 2014, the Debtor filed a brief in support of the Motion to Avoid

Ridgewood Lien, to which Ridgewood filed a reply on June 5, 2014.   I heard the matter on June

6, 2014, and, recognizing the overlapping issues with the Motion to Avoid NEPCO Lien, took

the Motion to Avoid Ridgewood Lien under advisement.

## III. POSITIONS OF THE PARTIES

The Debtor seeks to avoid the both the NEPCO Lien and the Ridgewood Lien pursuant to

11 U.S.C. § 522(f) as impairing her Exemption.   Given that the Lienholders' objections primarily

---

[41] The Debtor had made two prior attempts to avoid all judicial liens in a single motion, but I denied both motions
for failure to comply with various provisions of Massachusetts Local Bankruptcy Rule ("MLBR") 4003-1(a) and 11
U.S.C. § 522(f)(2)(B).

challenge the Debtor's entitlement to the Exemption, I will address their arguments before turning to her responses.

A. NEPCO

From the outset, NEPCO argues that despite the words "null and void" in the Ridgewood Judgment, the Ridgewood Judgment and Revived Certificate cannot be construed to eviscerate its rights, particularly since NEPCO was not a party to that action.  Acknowledging the difficulty with the words "void" and "voidable," NEPCO posits that the transfer to Goodhall was "avoided," meaning re-transferred back to the Debtor, rather than having been declared a legal nullity *ab initio*.  In support, NEPCO notes that the Massachusetts Uniform Fraudulent Transfer Act (the "UFTA") uses the word "voidable" rather than void.[42]  NEPCO also asserts that this is consistent with how the Land Court construed the Ridgewood Judgment as evidenced by the notation of the intervening encumbrances on the Revived Certificate.  In sum, NEPCO does not view the Revived Certificate as evidence that the Debtor owned the Property all along.

With that framework, NEPCO initially argues that pursuant to *Farrey v. Sanderfooot*,[43] the Debtor cannot avoid the NEPCO Lien because it fixed against Goodhall's interest in the Property at a time before the Debtor held record title to the Property.  NEPCO stresses that the Debtor did not acquire her interest from Goodhall until June 25, 2012, long after the NEPCO Lien had already attached.  NEPCO further notes that under Massachusetts law, its claim against Goodhall was a separate and distinct claim from that against the transferor.  Alternatively, NEPCO asserts that because its judgment, attachment, and execution are all based on a

---

[42] *See* Mass. Gen. Laws ch. 109A, § 9.

[43] *Farrey v. Sanderfoot*, 500 U.S. 291, 299, 111 S. Ct. 1825, 114 L. Ed. 2d 337 (1991).

fraudulent conveyance, the NEPCO Lien is excepted from Exemption under the fraud provisions of Mass. Gen. Laws ch. 188, § 3(b)(6).[44]

To the extent that the Exemption is not otherwise invalid, NEPCO contends that it must be limited to $155,675 pursuant to 11 U.S.C. § 522(p)(1) because the Debtor acquired a title interest to the Property within 1,215 days of the petition date.  In support, NEPCO relies on *In re Aroesty*[45] for the proposition that a trust beneficiary who acquires a title interest to the property held in trust within the 1,215 day period is subject to the provisions of 11 U.S.C. § 522(p)(1). Moreover, NEPCO posits that the value of the Exemption must be further reduced by the value of the non-exempt property fraudulently transferred within ten years of the petition in accordance with 11 U.S.C. § 522(o).  Beyond stating that the Property was worth $2,000,000.00 at the time of the transfer to Goodhall and not subject to a homestead, NEPCO does not elaborate how 11 U.S.C. § 522(o) applies in this case.

Finally, NEPCO argues that that the Debtor is seeking to avoid liens in the wrong order, and that the judicial liens junior to it must be avoided first.  Moreover, while NEPCO asserts that its own appraisal of the Property reflects a fair market value of $1,650,000.00.

B. Ridgewood

Like NEPCO, Ridgewood begins its analysis by focusing on the effect of the Ridgewood Judgment and the Debtor's subsequent actions to secure the Revived Certificate.   Unlike NEPCO, however, Ridgewood takes the position that the Debtor's Land Court petition was filed in direct violation of the Ridgewood Judgment's injunction barring her from taking any act "to

---

[44] *See* Mass. Gen. Laws ch. 188, § 3(b)(6).

[45] *Aroesty v. Bankowski (In re Aroesty)*, 385 B.R. 1 (B.A.P. 1st Cir. 2008).

transfer . . . or interfere" with Ridgewood levying on the Property.[46]   Accordingly, Ridgewood

argues that the Revived Certificate is "wholly void," rendering the Lanac Trust the current owner

of the Property.[47]

Based on the view that the Lanac Trust owns the Property rather than the Debtor,

Ridgewood asserts that the Exemption is invalid because Mass. Gen. Laws ch. 188, § 5 requires

a trustee to execute the declaration in favor of the beneficiaries of the trust that holds real

property.   Here, the Debtor, not Cirpriano, executed the 2012 Homestead.   Alternatively,

Ridgewood similarly argues that Mass. Gen. Laws ch. 188, § 3(b)(6) excepts the Ridgewood

Lien from the Exemption because it is a judgment based upon fraud.

Ridgewood further contends that the Ridgewood Lien in not avoidable under 11 U.S.C. §

522(f) because it predates the Debtor's ownership of the Property.   It reasons that either the

Revived Certificate, having been registered in violation of the Plymouth Superior Court's

injunction, did not transfer title to the Debtor and it remains in the Lanac Trust or the Revived

Certificate transferred title in June of 2012.   Assuming, *arguendo*, that the Exemption is valid

and the Debtor's Land Court petition was not void, Ridgewood also argues that the Exemption

must be reduced by operation of 11 U.S.C. § 522(p)(1).   Dismissing the Debtor's argument that

she did not "acquire" an interest because her acts were passive, Ridgewood contends that the

affirmative act of filing the Land Court petition clearly places her acquisition of a title interest

within the purview of 11 U.S.C. § 522(p)(1).

Next, Ridgewood contends that the Debtor's lien avoidance analysis is flawed in several

respects.   First, like NEPCO, Ridgewood objects to the Debtor seeking to avoid the Ridgewood

---

[46] Exhibit J, Docket No. 99-1 at 30-32.

[47] Ridgewood Objection, Docket No. 124 at ¶ 24.

Lien without first having avoided all junior judicial liens.  Second, Ridgewood states that the Debtor has overstated its secured claim by \$416,053.13, rendering her calculation mathematically incorrect.  Third, Ridgewood disputes the value of the Property assigned by the Debtor and requests an evidentiary hearing.

To the extent that the Debtor argues that the Ridgewood Lien expired by operation of law because Ridgewood did not file any lien continuations, Ridgewood asserts that the Debtor's Land Court Petition, which registered the Ridgewood Judgment in the Land Court within six years of the attachment, substantially complied with the provisions of Mass. Gen. Laws ch. 223, § 114A and successfully carried the Ridgewood Lien forward.

C. The Debtor

The Debtor's argument is also framed by her interpretation of the Ridgewood Judgment. In stark contrast to either NEPCO or Ridgewood, she asserts that the Plymouth Superior Court adjudicated that she has held an interest in the Property since March 22, 2005 and all times thereafter by declaring the deed to Goodhall null and void.  In other words, the Debtor never transferred the Property.  She further notes that the Land Court records confirm her uninterrupted title interest.

Because the Debtor maintains she has always held title to the Property, she disputes the Lienholders' assertions that their liens did not attach to her interest.  For the same reason she argues that she did not acquire an interest in Property within the 1,215 days prior to filing her bankruptcy petition, rendering 11 U.S.C. § 522(p)(1) inapplicable  Moreover, the Debtor asserts that the 2012 Homestead is valid because she was record owner at the time of registration.

If, however, I conclude that the Debtor has not been the uninterrupted title holder of the Property since 2005, she argues that she clearly possessed an interest in the Property at the time

of the NEPCO Lien and Ridgewood Lien by virtue of her 100% beneficial interest in the title

holding Lanac Trust.  In further support, she explains that Massachusetts law views the holders

of beneficial interests of a nominee trust like the Lanac Trust as the true owners.  As such, the

Debtor contends that the Lienholders' reliance on *Farrey v. Sanderfoot* is misplaced.  She further

distinguishes the present case from *In re Vizard*,[48] noting that her beneficial interest was not

destroyed upon receipt of the title interest such that she now holds an interest that is totally

unrelated to the one encumbered by the Lienholders.

The Debtor also urges me to reject Ridgewood's contention that the Plymouth Superior

Court's injunction barred her from registering a homestead declaration.  She posits that such an

injunction would be both against the public policy favoring homestead protection and in

violation of the Supremacy Clause of the United States Constitution.  Alternatively, the Debtor

notes that even in the absence of the 2012 Homestead, she may still take advantage of the 2011

Homestead.

Next, the Debtor asserts that, even if she received a new interest as a result of the

Ridgewood Judgment, she did not "acquire" an interest in Property for purposes of 11 U.S.C. §

522(p)(1).   Relying on *In re Welch*,[49] she contends that the word "acquire" requires an

affirmative act which is absent in this case.  To the contrary, the Debtor explains that she had no

control over the Plymouth Superior Court's ruling.  She further argues that the Land Court

petition was not sufficiently affirmative because it merely conformed the title certificate to the

---

[48] *In re Vizard*, 327 B.R. 515 (Bankr. D. Mass. 2005).

[49] *In re Welch*, 486 B.R. 1, 4 (Bankr. D. Mass. 2013).

findings of the Plymouth Superior Court. The Debtor posits that these facts distinguish her case form *In re Aroesty*, which involved the acceptance of a deed.[50]

The Debtor stresses that even if the Lienholders' debts are nondischargeable as being based upon fraud, that has no impact on whether the liens are avoidable under 11 U.S.C. § 522(f).[51] She does not, however, address the application of Mass. Gen. Laws ch. 188, § 3(b)(6). In any event, the Debtor further asserts that NEPCO has not satisfied any of the elements necessary for 11 U.S.C. § 522(o) as enunciated in *In re Noonan*.[52]

Contrary to the positions of both Lienholders, the Debtor maintains that she does not have to avoid the judicial liens on the Property in the order of their priority. In support, she again cites *In re Vizard* for the proposition that "the relative priorities of the judicial and mortgage liens have no bearing on the Court's determination of whether the Debtor may avoid the judicial lien."[53] Therefore, the Debtor argues that regardless of whether 11 U.S.C. § 522(p)(1) applies in this case, both the NEPCO Lien and the Ridgewood Lien are avoidable under 11 U.S.C. § 522(f).

Despite filing the Motion to Avoid Ridgewood Lien pursuant to 11 U.S.C. § 522(f), the Debtor has subsequently taken the position that the Ridgewood Lien expired by operation of Mass. Gen. Laws ch. 223, § 114A because neither Ridgewood or its counsel filed a written request to bring the lien forward within six years of the attachment.[54] Moreover, she asserts that

---

[50] *In re Aroesty*, 385 B.R. 6-7.

[51] Because the Lienholders did not raise this argument in their pleadings, this may have been meant to be a response to their argument that their liens are excepted from the homestead as judgments based upon fraud pursuant to Mass. Gen. Laws ch. 188, § 3(b)(6).

[52] *In re Noonan*, 13-15420-WCH, 2014 WL 184776 (Bankr. D. Mass. Jan. 15, 2014).

[53] *In re Vizard*, 327 B.R. at 518.

[54] *See* Mass. Gen. Laws ch. 223, § 114A.

16

neither the Ridgewood Judgment nor the Land Court petition, which registered the Ridgewood Judgment, relieved Ridgewood of that statutory obligation.   The Debtor also objects to Ridgewood dividing its claim into secured and unsecured components, arguing that it represents an inappropriate attempt to bypass operation of 11 U.S.C. § 522(f).   Additionally, she contends that if Ridgewood were to seek satisfaction from the Property, it would be required to obtain an execution which would be in the full amount of the Ridgewood Judgment.

Finally, the Debtor maintains that the fair market value of the Property is $980,000.00, but notes that even under NEPCO's value, both the NEPCO Lien and Ridgewood Lien would be avoidable.

## IV. <u>DISCUSSION</u>

### A. <u>Law Applicable to Lien Avoidance under Section 522(f)</u>

Section 522(f) of the Bankruptcy Code provides that a debtor may avoid the fixing of a judicial lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled. . . ."[55]   To determine whether a debtor's exemption is impaired, 11 U.S.C. § 522(f)(2)(A) provides the following formula:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of –
>
> (i) the lien;
>
> (ii) all other liens on the property; and
>
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.[56]

---

[55] 11 U.S.C. § 522(f)(1).

[56] 11 U.S.C. § 522(f)(2).

Pursuant to Fed. R. Bankr. P. 4003(d), "a creditor may object to a motion filed under § 522(f) by challenging the validity of the exemption asserted to be impaired by the lien."[57]

Under 11 U.S.C. § 522(b), "an individual debtor may exempt from property of the estate the property listed in . . . paragraph (3) of this subsection," which allows a debtor to claim the exemptions provided for under applicable state law.[58]   Exemptions listed on Schedule C are presumptively valid in the absence of an exemption.[59]   Fed. R. Bankr. P. 4003(c) places the burden to prove that an exemption is not properly claimed on the objecting party.[60]

Here, the Exemption is claimed pursuant to the Massachusetts Homestead Statute.  As a result of a comprehensive revision in 2010, "parsing the Massachusetts Homestead Statute now involves a complicated web of defined terms and cross-references."[61]   Nevertheless, given the substance of the Lienholders' objections, I need not tarry with a step by step explanation of the statutory provisions.  For purposes of this dispute, it is enough to say that generally, an owner may enjoy a homestead exemption in a home which the owner occupies or intends to occupy as a principal residence.[62]  If the owner properly recorded a homestead declaration, the exemption is in the amount of $500,000.[63]   Otherwise, the owner is entitled to an "automatic homestead exemption" in the amount of $125,000.[64]

---

[57] Fed. R. Bankr. P. 4003(d).

[58] 11 U.S.C. § 522(b)(1) and (3).

[59] 11 U.S.C. § 522(l) ("Unless a party in interest objects, the property claimed as exempt on such list is exempt.").

[60] Fed. R. Bankr. P. 4003(c).  *See Shamban v. Perry (In re Perry)*, 357 B.R. 175, 178 (B.A.P. 1st Cir. 2006).

[61] *In re Newcomb*, 513 B.R. 7, 12 (Bankr. D. Mass. 2014).

[62] *See* Mass. Gen. Laws ch. 188, §§ 3(a), 4.

[63] *See* Mass. Gen. Laws ch. 188, §§ 1, 5.

[64] *See* Mass. Gen. Laws ch. 188, §§ 1, 4.

The Lienholders do not dispute that the Property contains a "home," which the Debtor occupies or intends to occupy as a "principal residence."[65]   As explained below, however, there are objections to whether the Debtor was an "owner" at the time of the 2012 Homestead and whether it was properly recorded.

B. <u>Effect of the Ridgewood Judgment</u>

The most logical place to start my analysis is to consider the effect of the Ridgewood Judgment on status of the Property's title.  Each of the three parties to this dispute interprets the effect differently.  Ridgewood argues that the Ridgewood Judgment barred the Debtor and the Lanac Trust from further transferring title to the Property such that it remains in trust notwithstanding the Land Court petition.  The Debtor asserts that the Plymouth Superior Court declared the deed to Goodhall null and void, thus adjudicating her the only owner of the Property since March 22, 2005.  NEPCO generally agrees that a transfer has taken place as a result of the Ridgewood Judgment, but contends that the deed to Goodhall was avoided, that is, re-transferred to the Debtor, rather than having been declared a legal nullity *ab initio*.

Having reviewed the Ridgewood Judgment, the Ruling and Order, and Massachusetts law regarding fraudulent transfers, I find that NEPCO has the best of the three arguments. Admittedly, the Ridgewood Judgment expressly declared the deed to Goodhall "null and void" and the prior title certificate "revived," but the language used by the Massachusetts UFTA, the statute under which Ridgewood obtained judgment, indicates that a creditor may obtain "avoidance" of a fraudulent transfer and that such transfers are "voidable."[66]   Additionally, the Supreme Judicial Court of Massachusetts has described the relief under the UFTA as a

---

[65] *See* Mass. Gen. Laws ch. 188, § 1.

[66] Mass. Gen. Laws ch. 109A, §§ 8(a)(1), 9(b).

"reconveyance" of property.[67]   In this context, I read the Ridgewood Judgment to "undo" the fraudulent transfer, rather than declaring that, as a matter of law, it never occurred in the first place.

Accordingly, I reject the Debtor's argument that she has been the uninterrupted title holder of the Property since March 22, 2005.  I further note that Ridgewood's contention that the Ridgewood Judgment barred such a re-transfer appears antithetical to the relief it sought and obtained in the Plymouth Superior Court.

### C. Effect of the Land Court Petition

#### 1. Validity of the Revived Certificate

Ridgewood argues that the Debtor's filing of the Land Court petition violated the Plymouth Superior Court's injunction against transferring the Property.  I, however, find such a position dubious as the purpose of the Land Court petition was to conform the Property's title to the Ridgewood Judgment.  Indeed, the Ridgewood Judgment, by its own terms, declared the deed to Goodhall "null and void" and ordered the prior title certificate revived.[68]  Moreover, the Land Court had the Ridgewood Judgment as part of the Debtor's petition and effectuated its terms notwithstanding the unequivocal injunction.  Notably, Ridgewood has never sought relief from stay to return to the Plymouth Superior Court to commence a contempt action on account of the Land Court petition.  Ultimately, Ridgewood wants me to conclude that the Debtor was barred from taking any action with respect to the Property at all, but as a practical matter, the "transfer" Ridgewood complains of was already accomplished by the Plymouth Superior Court,

---

[67] *See, e.g.*, *Bakwin v. Mardirosian*, 467 Mass. 631, 634 (2014); *First Fed. Sav. & Loan Ass'n of Galion, Ohio v. Napoleon*, 428 Mass. 371, 381 (1998). *See also Fleet Nat. Bank of Massachusetts v. Merriam*, 45 Mass. App. Ct. 592, 594 (1998).

[68] Exhibit J, Docket No. 99-1 at 30-32.

not the Debtor.  Therefore, I find that the Revived Certificate is not void as having been done in

violation of the Plymouth Superior Court's injunction.

2. Validity of the Ridgewood Lien

The Debtor asserts that the Ridgewood Lien expired as a matter of law because neither

Ridgewood nor its counsel timely requested the register of deeds bring to the attachment forward

for another six years.  The relevant statute, Mass. Gen. Laws ch. 223, § 114A, provides:

> An attachment of land, or of a right or interest therein, shall, unless otherwise
> dissolved, expire by operation of law at the end of six years from the date of filing
> the same in the office of the register of deeds in the county or district where said
> land or some part of it is situated, unless said register shall, within said period, *at
> the written request of the plaintiff or his attorney* bring forward the same upon the
> books of attachments.[69]

While writ of attachment becomes a perfected judgment lien upon judgment, the risk remains

that a writ of attachment is only valid for six years unexecuted.[70]

Ridgewood does not dispute its failure to bring the attachment forward.  Nevertheless, it

dismisses its inaction as technical, asserting that the recordation of the Ridgewood Judgment in

the Land Court before the expiration of the initial six year period, albeit by the Debtor, was

substantial compliance with the statute.  Notably, the Ridgewood Judgment provides:

> It is further ORDERED that the attachment issued by the Court dated September
> 13, 2006 . . . shall continue in full force and effect unless otherwise ordered by the
> Court.[71]

The Debtor responds that the text of the Ridgewood Judgment does not supersede the statutory

requirements, but not address the effect of its recordation in the Land Court.  Although NEPCO's

---

[69] Mass. Gen. Laws Ann. ch. 223, § 114A

[70] *Citibank, N.A. v. Leahy*, CIV.A. 04-0153A, 2005 WL 937338, *2 n. 8 (Mass. Super. Mar. 28, 2005)

[71] Exhibit J, Docket No. 99-1 at 30-32.

relative priority would be raised if the Ridgewood Lien expired, NEPCO has not taken a position on this matter.

Unfortunately, there is a dearth of case law on Mass. Gen. Laws ch. 223, § 114A. On the subject of substantial compliance, however, the Supreme Judicial Court has explained:

> It has been argued that the use of the word "shall" in the statute imposes the requirement of strict compliance with the prescribed formalities. In this instance we hold that there was sufficient compliance with the statute. We are much persuaded by the observation of Judge Learned Hand that "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."[72]

In another case relating to an election recount statute, the Supreme Judicial Court held that there was substantial compliance where the prime objective of the statute was satisfied.[73]

Although it is a close call, I am persuaded that if the Supreme Judicial Court were faced with this question, it would find the recordation of the Ridgewood Judgment was sufficient to bring forward the Ridgewood Lien. The statute requires the register of deeds to bring forward the attachment upon the request of the plaintiff, affording it no discretion in such action.[74] Here, the appropriate registry—the Land Court—received a copy of the Ridgewood Judgment, which provided that the attachment was to continue until further order of the Plymouth Superior Court. Just as the register of deeds would do with the written request, the Land Court recorded the Ridgewood Judgment. Therefore, any interested party examining the Land Court records would discover the Ridgewood Judgment and its directive. As the purpose of a recording statute is typically, though not always, to give notice, I find that the recordation of the Ridgewood

---

[72] *Abbene v. Bd. of Election Comm'rs of Revere*, 348 Mass. 247, 250-51 (1964) (*quoting Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945)).

[73] *Crosby v. Bd. of Election Comm'rs of Newton*, 350 Mass. 544, 548 (1966).

[74] *See* Mass. Gen. Laws ch. 223, § 114A.

Judgment satisfied that objective.  Accordingly, I conclude that the Ridgewood Lien did not expire as a matter of law.

    D. <u>Validity of the Homestead Declaration and Exemption</u>

Starting from the premise that title remains with the Lanac Trust, Ridgewood challenges the validity of the 2012 Homestead for several reasons.[75]  As I have explained above, I have determined that title to the Property returned to the Debtor.  Nevertheless, I observe that even if the Debtor could not have executed the 2012 Homestead because only the trustee can do so under Mass. Gen. Laws ch. 188, § 5(a)(4), the 2011 Homestead executed by Cirpriano would not have terminated due to the invalidity of the 2012 Homestead.[76]

The Debtor contends, and I agree, that Ridgewood's implicit argument is that the acquisition of a homestead itself violated the Plymouth Superior Court's injunction.  This position is flawed because the acquisition of a homestead neither alienates nor transfers an interest in property.[77]  Nor was it an act to hinder or interfere with Ridgewood levying on the Property, as it was already subject to the 2011 Homestead or, in the absence of a declared homestead, the automatic homestead exemption.[78]  I further note that outside of bankruptcy, Ridgewood's debt was excepted from the Massachusetts Homestead Statute as a pre-existing lien and a judgment based on fraud, rendering an injunction unnecessary.[79]  In any event, because

---

[75] I note that Ridgewood also seemingly objects to the Debtor claiming the Exemption because she is not the "owner" of the Property.  This, however, is easily dismissed because the Massachusetts Homestead Statute defines "owner" to include "a natural person who is a sole owner . . . or holder of a beneficial interest in a trust."  Mass. Gen. Laws ch. 188, § 1.  Thus, even if the Ridgewood Judgment did not reconvey the Property back to the Debtor as I have determined, she remains an "owner" by virtue of her beneficial interest in the Lanac Trust.

[76] Mass. Gen. Laws ch. 188, § 10(c).

[77] *See In re Miller*, 113 B.R. 98, 105 (Bankr. D. Mass. 1990) (the declaration of homestead is not a fraudulent conveyance).

[78] *See* Mass. Gen. Laws ch. 188, § 4.

[79] *See* Mass. Gen. Laws ch. 188, § 3(b)(2), (6).

"Homestead laws are based on public policy that favors preservation of the family home regardless of the householder's financial condition,"[80] I predict the Supreme Judicial Court would find an injunction prohibiting the acquisition of a homestead against public policy. Therefore, the 2012 Homestead is valid.

E. Fixing of a Lien on an Interest of the Debtor in Property

As previously stated, 11 U.S.C. § 522(f)(1) permits a debtor to avoid "the fixing of a lien on an interest of the debtor in property."[81]  In *Farrey v. Sanderfoot*, the Supreme Court held that this phrase means that a debtor may only avoid "a lien only where the lien attached to the debtor's interest at some point after the debtor obtained the interest."[82]  Thus, the Lienholders argue that their liens fixed on the Property before the Debtor had an interest.  They are mistaken.

The Ridgewood Lien and the NEPCO Lien were recorded in September 2006 and November 2007, respectively.  At this time, title to the Property remained in the Lanac Trust, but the Debtor held 100% of the beneficial interests.  While "a beneficial interest in a real estate trust, even a nominee real estate trust . . . is not *per se* the equivalent of an ownership interest in real estate by deed,"[83] "the arrangement has been likened to a principal-agent relationship in which the 'trustees are frequently seen as agents for the principals' convenience rather than . . . in the more familiar fiduciary sense.'"[84]  In light of the beneficiaries' pervasive control of a nominee trust, Judge Feeney ruled in *In re Eastmare Dev. Corp.* that "for purposes of section

---

[80] *Shamban v. Masidlover*, 429 Mass. 50, 53 (1999).

[81] 11 U.S.C. § 522(f)(1).

[82] *Farrey v. Sanderfoot*, 500 U.S. at 296.

[83] *In re Varrichione*, 354 B.R. 563, 570 (Bankr. D. Mass. 2006).

[84] *In re Colbran, LLC*, 475 B.R. 289, 296 (Bankr. D. Mass. 2012) (*quoting Apahouser Lock and Sec. Corp. v. Carvelli*, 26 Mass. App. Ct. 385, 388 (1988)).

541 of the Bankruptcy Code, the Debtor's estate includes equitable ownership of the nominee trust *res*."[85]  Because a "lien" is a charge against Property, no matter how one views the situation, the Debtor had an interest in the Property to which the liens fixed.[86]  The Lienholders offer no compelling argument to the contrary.

F. Applicability of the Massachusetts Homestead Statute's Fraud Exception

Both Lienholders assert that their liens are excepted from the Massachusetts Homestead Statute pursuant to Mass. Gen. Laws ch. 188, § 3(b)(6).  That section provides:

> An estate of homestead shall be exempt from the laws of conveyance, descent, devise, attachment, seizure, execution on judgment, levy and sale for payment of debts or legacies except as follows:
>
> * * *
>
> (6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake, duress, undue influence or lack of capacity.[87]

The Debtor argues that this state law exception has been preempted by the Bankruptcy Code.

Generally speaking, "[p]roperty that is properly exempted under § 522 is immunized against liability for prebankruptcy debts."[88]  As recognized by the Supreme Court of the United States in *Law v. Siegel*, 11 U.S.C. "§ 522 sets forth a number of carefully calibrated exceptions and limitations, some of which relate to the debtor's misconduct."[89]  Several of these exceptions specifically target fraud.  For example, 11 U.S.C. § 522(c)(4) leaves exempt property liable for

---

[85] *In re Eastmare Dev. Corp.*, 150 B.R. 495, 503 (Bankr. D. Mass. 1993).

[86] 11 U.S.C. § 101(37).

[87] Mass. Gen. Laws ch. 188, § 3(b)(6).

[88] *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991).  *See also* 11 U.S.C. § 522(c) ("[P]roperty exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . . .").

[89] *Law v. Siegel*, 134 S. Ct. 1188, 1196, 188 L. Ed. 2d 146 (2014).

certain kinds of prepetition debts arising from fraud in connection with student loans.[90]   Section

522(o) of the Bankruptcy Code prevents a debtor from claiming a homestead exemption to the

extent he acquired the homestead with nonexempt property in the previous 10 years "with the

intent to hinder, delay, or defraud a creditor."[91]   Section 522(q) of the Bankruptcy Code caps a

debtor's homestead exemption at $155,675, but does not disallow it, where the debtor owes a

debt arising from securities fraud.[92]   Despite these limited exceptions, there is no general

exception to 11 U.S.C. § 522(c) for debts arising from fraud.

In *In re Weinstein*, the United States Court of Appeals for the First Circuit held that the

Massachusetts Homestead Statute's pre-existing debt exception conflicted with 11 U.S.C. §

522(c) because it was not among the excepted types of prepetition debt listed in that section and

was therefore preempted.[93]   Citing *Owen v. Owen*,[94] the First Circuit explained:

> As the Supreme Court recognized in discussing the interplay between § 522(f)
> and state exemption exceptions in *Owen*, the state's ability to define its
> exemptions is not absolute and must yield to conflicting policies in the
> Bankruptcy Code.[95]

On its face, the same reasoning applies to the fraud exception Mass. Gen. Laws ch. 188, §

3(b)(6).   To the extent that Mass. Gen. Laws ch. 188, § 3(b)(6) seeks to except prepetition debts

for fraud that do not otherwise fall into a an exception contained within 11 U.S.C. § 522, it

conflicts with the Bankruptcy Code and must give way.

---

[90] 11 U.S.C. § 522(c)(4).

[91] 11 U.S.C. § 522(o).

[92] 11 U.S.C. § 522(q)(1)(B)(ii).

[93] *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677, 682 (1st Cir.1999).

[94] *Owen v. Owen*, 500 U.S. at 305.

[95] *In re Weinstein*, 164 F.3d at 683 (*citing Owen v. Owen*, 500 U.S. at 313).

As a final note, despite the Supreme Court's recent admonition that "when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption," I do not understand the Supreme Court to have abrogated *Owen*'s central premise that state law exemptions are preempted to the extent they conflict with the Bankruptcy Code.[96]  To the contrary, the Supreme Court cited *In re Sholdan*[97] with approval as an example of how a state may provide the means to address debtor misconduct.[98]  In that case, the United States Court of Appeals for the Eighth Circuit held that under "Minnesota's enactment of the [UFTA], a debtor may not claim a homestead exemption when he or she transfers the property 'with actual intent to hinder, delay, or defraud' creditors."[99]  Thus, the restriction on the debtor's homestead arose from the Minnesota UFTA and not from an exception to the homestead statute.  To be clear, however, the Massachusetts UFTA has no such provision.

In sum, Mass. Gen. Laws ch. 188, § 3(b)(6) is preempted by 11 U.S.C. § 522(c).  Thus, the NEPCO Lien and the Ridgewood Lien are not excepted from the Exemption.

G.  Applicability of Section 522(p)

Section 522(p)(1) of the Bankruptcy Code provides in relevant part:

a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $155,6751 in value in—

(A) real or personal property that the debtor or a dependent of the debtor uses as a residence . . . .[100]

---

[96] *Law v. Siegel*, 134 S. Ct. at 1196-1197 (emphasis in original).

[97] *Jensen v. Dietz (In re Sholdan)*, 217 F.3d 1006, 1008 (8th Cir. 2000).

[98] *Law v. Siegel*, 134 S. Ct. at 1197.

[99] *Id.*

[100] 11 U.S.C. § 522(p)(1)(A).

The United States Bankruptcy Appellate Panel for the First Circuit has held that a homestead exemption permitted under state law is subject to this limitation where: "(i) an interest in property (ii) is acquired by the debtor (iii) within 1,215 days of the petition filing date."[101]   The Lienholders contend all three elements are satisfied because the Debtor acquired a title interest to the Property on June 25, 2012, two hundred and twelve days prior to the filing of the bankruptcy petition.

The Debtor, on the other hand, disputes that she "acquired" an interest in the Property as that term in used in 11 U.S.C. § 522(p)(1).[102]   She relies on Judge Hoffman's decision in *In re Welch* for the proposition that "the debtor must actively acquire the interest" for the cap to apply.[103]   The Debtor contends that her actions do not constitute an active acquisition of an interest because the Land Court simply conformed the certificate of title to the Ridgewood Judgment.

In *In re Leung*, I recognized that 11 U.S.C. § 522(p)(1) *may* require "an affirmative action" by the debtor.[104]   This observation arose from a survey of cases holding "that the appreciation in equity during the 1215 period was not an 'interest that was acquired by the debtor' for purposes of the statute."[105]   One case in particular, *In re Rasmussen*, which was relied upon by Judge Hoffman, reasoned:

---

[101] *In re Aroesty*, 385 B.R. at 4.

[102] Based on my findings above, I reject the Debtor's argument that 11 U.S.C. § 522(p)(1) does not apply because she has held title to the Property since March 22, 2005.

[103] *In re Welch*, 486 B.R. at 4.

[104] *In re Leung*, 356 B.R. 317, 322 (Bankr. D. Mass. 2006)

[105] *Id.* at 321-322.

the addition of the clause "by the debtor" after "acquires" implies more than a passive acquisition—such as by appreciation; it implies an active acquisition of equity such as by an affirmative act of a down payment or mortgage pay down.[106]

Put simply, the distinction between "passive" and "active" acquisition, to the extent that the Bankruptcy Code mandates this distinction, is meant to address a very narrow issue. When analyzing actual transfers of property interests, these distinctions are less meaningful given that the acceptance and recording of a deed has been held sufficient to "acquire" an interest for purposes of this section.[107]

Admittedly, the case at bar presents a new twist. As I stated above, I conclude that the effect of the Ridgewood Judgment was to reconvey the Property back to the Debtor, thus undoing the fraudulent transfer. Even if, as the Debtor urges, that did not constitute a declaration that she always held title to the Property, the question remains as to whether her acquisition of the title interest was a sufficiently "active" acquisition to fall within 11 U.S.C. § 522(p)(1). Given this record, I have no trouble finding that the Debtor actively acquired the title interest to the Property because it necessarily resulted from her actively deeding the Property to Goodhall in fraud of her creditors. But for her fraudulent transfer, the title interest would have remained with the Lanac Trust. In this way, the Debtor's deeding away of the Property inextricably linked to its ultimate return. I further note that the filing of the Land Court petition to conform the Property's title to the Ridgewood Judgment was in this context, not unlike recording a deed.

For these reasons, I find that the Debtor acquired the title interest to the Property from the Lanac Trust on November 2, 2011, four hundred and forty-seven days prepetition, by virtue of the entry of the Ridgewood Judgment. As such, the Exemption is capped at $155,675.00.

---

[106] *In re Rasmussen*, 349 B.R. 747, 757 (Bankr. M.D. Fla. 2006)

[107] *In re Aroesty*, 385 B.R. at 7; *In re Leung*, 356 B.R. at 322.

H. Applicability of Section 522(o)

Section 522(o) of the Bankruptcy Code was enacted as part of the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005 ("BAPCPA") to limit the value of a debtor's

homestead exemption in certain circumstances.[108]  It provides in relevant part:

> (o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the
> value of an interest in—
>
>> (1) real or personal property that the debtor or a dependent of the debtor
>> uses as a residence; [or]
>>
>> * * *
>>
>> (4) real or personal property that the debtor or a dependent of the debtor
>> claims as a homestead;
>
> shall be reduced to the extent that such value is attributable to any portion of any
> property that the debtor disposed of in the 10-year period ending on the date of
> the filing of the petition with the intent to hinder, delay, or defraud a creditor and
> that the debtor could not exempt, or that portion that the debtor could not exempt,
> under subsection (b), if on such date the debtor had held the property so disposed
> of.[109]

In *In re Corbett*, Judge Feeney of this district recognized that a party must establish the

following four elements to sustain an objection under 11 U.S.C. § 522(o):

---

[108] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23,
11 U.S.C. § 101, *et seq.*  As cogently explained by the United States Bankruptcy Appellate Panel for the Tenth
Circuit:

> The addition of § 522(o) to the Bankruptcy Code was "intended to strike a balance between the
> rights of debtors and creditors in states with unlimited homestead exemptions . . . and to make
> clear that abusive pre-bankruptcy planning will not be tolerated at the expense of creditors."
> However, even after BAPCPA's amendments, "[s]ection 522 continues to adopt the position
> favorably viewed by the Code drafters that the mere conversion of nonexempt property into
> exempt property, without fraudulent intent, does not deprive the debtor of exemption rights in the
> converted property." Ultimately, it appears that the purpose of adding § 522(o) and § 522(p) in
> 2005 was the attempt by Congress to address the pre-BAPCPA "mansion loophole" and to limit
> the value of homestead exemptions when there is fraud. This lends support to our interpretation of
> § 522(o)—that the statute was enacted to prevent the fraudulent attempt to build up equity in a
> homestead.

*Soulé v. Willcut (In re Willcut)*, 472 B.R. 88, 94 (B.A.P. 10th Cir. 2012) (footnotes omitted).

[109] 11 U.S.C. § 522(o).

(1) the debtor disposed of property within the 10 years preceding the bankruptcy filing;

(2) the property that the debtor disposed of was nonexempt;

(3) some of the proceeds from the sale of the nonexempt property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and

(4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor.[110]

As previously stated, NEPCO has made no effort establish any of the four of the requisite elements under 11 U.S.C. § 522(o).  Indeed, I cannot fathom how NEPCO could satisfy the third element.  That is not my responsibility, however, as the First Circuit has repeatedly stated that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work."[111]  Thus, the argument is waived.

I. Order of Lien Avoidance

The Lienholders assert that the Debtor must avoid liens in the reverse order of their priority and thus cannot yet avoid the NEPCO Lien or Ridgewood Lien.  The Debtor asserts that this is erroneous, and cites *In re Vizard* for this proposition.  The passage on which she relies states "the relative priorities of the judicial and mortgage liens have no bearing on the Court's determination of whether the Debtor may avoid the judicial lien."[112]  Taken out of context, this passage suggests that the relative priorities of liens are generally irrelevant.  The issue presented in that case, however, was whether the Debtor could avoid a judicial lien that was senior to a

---

[110] *In re Corbett*, 478 B.R. 62, 69 (Bankr. D. Mass. 2012) (*quoting In re Presto*, 376 B.R. 554, 568 (Bankr. S.D. Tex. 2007)).

[111] *DiVittorio v. HSBC Bank USA, NA (In re DiVittorio)*, 670 F.3d 273, 288 (1st Cir. 2012); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990).

[112] *In re Vizard*, 327 B.R. at 518.

consensual mortgage.[113]   Therefore, a more accurate reading of this passage is that "the relative priorities of judicial liens and *mortgage liens*," as to each other, "have no bearing on the Court's determination of whether the Debtor may avoid the judicial lien."[114]

In many cases, the amount of the non-judicial liens coupled with the value of the exemption claimed so far exceed the value of the property that the sequence of avoidance is irrelevant.[115]   In cases where there is non-exempt equity in the property such that one or more judicial liens is unavoidable or only partially avoidable, priority matters.   Thus, courts have held that the most junior liens should be avoided first to afford proper deference to each lienholder's relative priority.[116]   This is logical because the Debtor would otherwise be arbitrarily choosing which creditors would lose their secured status.

Even assuming, as the Debtor asserts, the Property has a value of $980,000.00, there would be $222,476.16 of non-exempt equity in the Property after taking into account the Exemption ($155,675.00), the first mortgage ($485,413.00), the second mortgage ($99,227.00), the federal tax lien ($15,208.84), and the Massachusetts tax lien ($2,000).[117]   Therefore, before avoiding the NEPCO Lien or Ridgewood Lien, the Debtor must first seek to avoid the remaining judicial liens.   Thus, I will enter a conditional order directing the Debtor to file, within fourteen

---

[113] *Id.* at 517-518 (*citing In re Smith*, 315 B.R. 636, 641 (Bankr. D. Mass. 2004) ("Though Congress went to some length to distinguish those [liens] that could be avoided from those that would be protected, it gave no special protection to judicial liens that are senior to unavoidable mortgages.")).

[114] *Id.* at 518.

[115] *See In re Derocha*, 503 B.R. 553, 555 (Bankr. D.R.I. 2014).

[116] *See, e.g., Bank of America Nat'l Trust Savings Ass'n v. Hanger (In re Hanger)*, 217 B.R. 592, 595 (9th Cir. BAP 1997), *aff'd* 196 F.3d 1292 (9th Cir. 1999); *In re Heaney*, 453 B.R. 42, 48 (Bankr. E.D.N.Y. 2011); *In re Dolan*, 230 B.R. 642, 647 (Bankr. D. Conn. 1999).

[117] $155,675.00 ( the Exemption) + $485,413.00 (the first mortgage) + $99,227.00 (the second mortgage) + $15,208.84 (the federal tax lien) + $2,000.00 (the Massachusetts tax lien) = $757,523.84.   Therefore, value of the Property ($980,000.00) exceeds the sum of the non-judicial liens and the Exemption ($757,523.84) by $222,476.16.

days, a motion or motions seeking avoidance of the judicial liens junior to Ridgewood and NEPCO failing which, the Lien Avoidance Motions will be denied without prejudice.[118]

### J. Value of the Property

The Debtor asserts that the value of the Property is $980,000.00. NEPCO contends that it is worth $1,650,000.00. Ridgewood does not offer a value of its own, but disputes the Debtor's value and requests an evidentiary hearing. As such, I will schedule this matter for an evidentiary hearing, provided that the Debtor complies with my conditional order and moves to avoid the remaining judicial liens.

### K. Value of the Ridgewood Lien

As stated above, Ridgewood filed a proof of claim asserting a secured claim in the amount of $300,000.00, the amount of its pre-judgment attachment. Nevertheless, the Debtor asserts that its full judgment amount of $716,053.13 should be used to calculate the impairment of the Exemption under 11 U.S.C. § 522(f)(2)(A). She reasons that, in order to levy against the Property, Ridgewood would first need to obtain an execution in the full amount of the Ridgewood Judgment, making that the appropriate figure. Ultimately, unless the Property is worth more than $1,057.523.84, the sum of the Ridgewood Lien valued at $300,000.00, the non-judicial liens, and the Exemption, the issue is moot.[119] As such, I will defer ruling on this matter until the valuation hearing.

---

[118] While a single motion will suffice, the Debtor must nevertheless separately perform the 11 U.S.C. § 522(f)(2)(A) calculation for each lien, each time removing the liens that have been previously tested for avoidance. *See* 11 U.S.C. § 522(f)(2)(B); *see also In re Derocha*, 503 B.R. at 557-558.

[119] $300,000.00 (the Hypothetical Value of the Ridgewood Lien) + $485,413.00 (the first mortgage) + $99,227.00 (the second mortgage) + $15,208.84 (the federal tax lien) + $2,000.00 (the Massachusetts tax lien) + $155,675.00 (the Exemption)  = $757,523.84.

## V. **CONCLUSION**

In light of the foregoing, I will enter an order limiting the Exemption to $155,675 pursuant to 11 U.S.C. § 522(p)(1) and directing the Debtor to file, within fourteen days, a motion or motions seeking avoidance of the judicial liens junior to Ridgewood and NEPCO failing which, the Lien Avoidance Motions will be denied without prejudice.  If the Debtor timely seeks avoidance of the remaining judicial liens, I will schedule an evidentiary hearing to determine the valuation of the Property.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: August 28, 2014

Counsel Appearing:

    Amy Lee Lipman-White, Law Office of Lipman & White, Hanover, MA,
        for the Debtor
    Thomas J. Raftery, Raftery Law Offices, North Chatham, MA,
        for New England Phoenix Co., Inc.
    Christopher Condon, Murphy & King, P.C., Boston, MA
        for Ridgewood Partners, LLC